## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## COLUMBIA DIVISION

JOHN DOE
    *Plaintiff,*

v.

BRIAN SPENCER and
FICTITIOUS PERSONS 1-10
    *Defendants*

CIVIL ACTION NO. _____

JURY TRIAL DEMANDED

---

## VERIFIED COMPLAINT

---

COMES NOW, the Plaintiff, JOHN DOE, by and through counsel, and files this Verified Complaint[1] against the Defendants BRIAN SPENCER and FICTITIOUS PERSONS 1-10, and in support thereof states as follows, *viz.*:

### *PRELIMINARY STATEMENT*

1.    On March 15, 2022, President Biden signed into law the Violence Against Women Reauthorization Act of 2022. Section 1309 of the act is codified as 15 U.S.C. § 6851. Subsection (b)(1) thereof creates a private right of action for victims of what is commonly referred to as "revenge porn," *viz.*:

> In general. Except as provided in paragraph (4), an individual whose intimate visual depiction is disclosed, in or affecting interstate or foreign commerce or using any means or facility of interstate or foreign commerce, without the consent of the individual, where such disclosure was made by a person who knows that, or recklessly disregards whether, the individual has not consented to such disclosure, may bring a civil action against that person in an appropriate district court of the United States for relief as set forth in paragraph (3).

---

[1] Plaintiff has signed the verification as "John Doe." A verification with his true name is available to the Court upon request.

15 U.S.C. § 6851 (b)(1).

2.      This complaint will describe – within the bounds of common decency, judicial decorum, and the law – ten (10) separate instances where the Defendant triggered liability under § 6851.  The first instance happened on October 12, 2022, twelve days after § 6851 had gone into effect.  See Jackson v. Nelson, No. 2:22-cv-00053-JHC, 2022 U.S. Dist. LEXIS 122994, at *6 (W.D. Wash. July 12, 2022) (holding that the effective date for § 6851 was October 1, 2022.)  Therefore, every instance described herein falls squarely within the province of § 6851, thereby giving rise to Plaintiff's claims.

3.      For each violation of  § 6851, Plaintiff "may recover … liquidated damages in the amount of $150,000, and the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred."  § 6851(b)(3)(A)(i).  Plaintiff may also obtain "a temporary restraining order, a preliminary injunction, or a permanent injunction ordering the defendant to cease display or disclosure of the visual depiction." § 6851(b)(3)(B).   Plaintiff seeks this relief for all ten (10) of these violations.

4.      In addition, Plaintiff, by way of this Court's supplemental jurisdiction, seeks relief under various state-law tort theories, including negligence per se, intentional infliction of emotional distress, and invasion of privacy.

### PARTIES, JURISIDICTION, AND VENUE

5.      Plaintiff JOHN DOE ("Plaintiff") is an adult resident citizen of Marshall County, Tennessee.  As set forth in his separate motion, Plaintiff requests anonymity as set forth in the motion filed concomitantly with this Complaint.

6.      Defendant BRIAN SPENCER ("Defendant" or "Brian") is an adult resident citizen of the Commonwealth of Massachusetts.  He may be served with process at 47

Dean Place, East Bridgewater, MA 02333. Brian is married to a woman who shall be referred to as "S.S." She is not a party to this action; therefore, Plaintiff endeavors to protect her identity as much as is feasibly possible.

7. Defendants FICTITIOUS PERSONS 1-10 are those persons, firms, corporations, or other entities who are responsible to the Plaintiff for the damages he has sustained and whose identities are unknown but will be added by appropriate amendments when ascertained. Any mention herein of the named Defendant incorporates by reference the Fictitious Person Defendants.

8. This Court has federal-question jurisdiction over this matter pursuant to 28 U.S.C. § 1331 since this Complaint is based upon a federal statute giving rise to a private cause of action. This Court has supplemental jurisdiction over all state-law claims pursuant to 28 U.S.C. § 1367.

9. This Court has personal jurisdiction over the Defendant because he committed a tort outside this state that caused injury inside this state, and because he purposefully availed himself to the jurisdiction of this State. "[E]ven if all the tortious acts in a case were committed outside the State of Tennessee, … but the resulting tortious injury was sustained within the State, then the tortious acts and the injury are inseparable and jurisdiction lies in Tennessee." Jasper Aviation v. McCollum Aviation, 497 S.W.2d 240, 244 (Tenn. 1972) (internal citations omitted).

10. Venue is appropriate herein pursuant to 28 U.S.C. § 1391 (b) (2) because a substantial part of the events giving rise to the claims occurred in this judicial district.

### *FACTS COMMON TO ALL COUNTS*

11.    In 2022, Plaintiff engaged in a consensual, extramarital, online relation-
ship with S.S.  The duo exchanged a series of sexually explicit photographs, videos, and
messages with each other.  S.S. retained copies of these sexually explicit photographs,
videos, and messages on her iPad, mobile phone, and/or other computing device.  Plaintiff
never consented for this material to be disseminated to anyone else.

12.  Brian obtained access to these sexually explicit photographs, videos, and mes-
sages.  On October 12, 2022, he also used S.S.'s Facebook Messenger account to communi-
cate with Plaintiff's wife.  Therein Brian identified himself as S.S's husband, stating:

> Hi ….. curious if you knew that your husband has been send-
> ing [euphemism for "penis" redacted] videos to my wife since
> April or before?  him [sexual euphemism redacted] her [sexual
> euphemism redacted] …. I figured I'd share it with you.

In this same Facebook Messenger conversation, Brian obtained the email address of
Plaintiff's wife and promised to send her copies of these sexually explicit photographs,
videos, and messages.  Brian also states that he is "… probably going to post all the mes-
sages on her page."  Thus, as early as October 12, 2022 , Brian was already contemplating
bringing publicity to the explicit content derived from Plaintiff and S.S.'s online affair.

13.  Brian did not post anything on S.S.'s Facebook page (or at least not to Plain-
tiff's knowledge).  However, Brian did send nine (9) emails to Plaintiff's wife containing
multiple photographs, videos, and messages that Plaintiff and S.S. had exchanged.  The
emails came from the address brispence@comcast.net, which is known to be Brian's email
address.  The photographs, videos, and messages found in these emails contain sexually
explicit visual depictions of Plaintiff's uncovered genitalia (such as his penis).  Based
upon other information displayed in connection with these visual depictions, including,

but not limited to, images of Plaintiff's face and name (on the top of the screen evidencing from which Facebook account it originated), Plaintiff's identity is readily apparent.

14. Brian was not finished. On October 27, 2022, at 10:21 PM CDT, Brian sent an email to Plaintiff from the same brispence@comcast.net account, which states as follows (with certain redactions indicated by brackets)[2]:

> Hello  [Plaintiff] I'm sure by seeing my name you're more than aware of who I am and what this is in regards to. I'm going to skip the pleasantries, name calling, and any other "Manly" type of [expletive deleted] and get straight to the point. After the pathetic amount of laughable [slang term for masturbation] you and my wife did on video together I've decided that I'll be filing for a divorce and while I have 15+ videos of you [slang term for masturbation] "Mr. Big" which I hate to burst your bubble but my wife has never been good at naming thing's apparently because she was about 5-6 inches off on this one, however I was lucky enough to get most yours and some of hers but only up to a certain point I think it was in April late March that I stopped and I honestly was hurt at first but then realized how easy you just made it for me. I have almost every bit of the FB messenger conversation including the videos but need the very beginning as I'm sure you know after I let your wife in on your "secret lover" [expletive deleted].  I'm not threatening you in anyway but I am requesting you email me every video she sent mainly (I seen enough of yours and you're gonna go blind) on FB or any other platform I would also like to see the entire conversation sent to me including anything you may have from your words with friends games! Any photos records of calls both voice and video so pretty much any and all communication between you two. As I said I'm not threatening you but I will say if I can't get these items because you "deleted"(your type of perv keeps this stuff) them then or any other dumb excuse I can definitely send you a text with what I have of you already at what is it?  931-359-[xxxx]? Or [xxxx]? Old numbers? 931-652-[xxxx] I can keep going  I've found quite a few of the relatives #s too.  I need to

---

[2] The same message was sent to Plaintiff by way of Brian's personal Facebook Messenger account. Cf. p. 13, infra.

confirm that you are in fact the man masturbating in the mirror at the sink where your wife and kids brush their teeth! For court If the numbers aren't right maybe if I overnight them on a disc to [plaintiff's address redacted] over there in Lewisburg TN (needs more trees btw there's no shade and pools def small) and Y'all can stick it the dvd player on family movie night you got what 4 kids? I do too we used to do Saturdays and invite her family over but man this amount of [slang term for masturbation] her moaning and sloppy wet with the bracelets I bought her might not make for the best movie choice when your sister in law visits it's [Name Redacted] right? Yea I heard she's the tough one more out spoken than [Plaintiff's Wife] I bet she's [slang term for angry] huh? Off topic for a second how dare you put these types of videos out when your lovely wife is a [occupation redacted]? I hope you do realize my first impulse was to post this smut on anybody's social media in your family the cousins in-laws aunts uncles (over 18 of course I'm not a pig like you) at [Plaintiff's Place of Business Redacted]? And I wouldn't be dumb enough to send them to just that [Plaintiff's Email Redacted] nah i was planning to make a call over there and politely ask for your company email along with a few others then shoot them over for confirmation that it's really the infamous "Mr. Big" I'm sure they'd all be proud of the Operations managers extensive collection of videos trying to get that [slang term for penis] up over his thumb [slang term for masturbating]. This is getting long and my wife says I wrote novels and heck it looks like I do but I promise I will make it my life's only focus to humiliate you the way you two have me. I'm sure as an IT guy btw I love how you begged for photos promising her that there was no way any would catch you because "I'm an IT guy" well cousin IT you isn't very good cuz if ya were I wouldn't have caught you two grotesque pigs. Being in IT I'm also sure you know how easy it is to get one's personal friends career family info so ask yourself is some pig in Boston you played, [expletive deleted] like you wanted her to come there for a seminar or you here to get photos and videos from reeeeeallly worth any dignity you have left? Your wife seemed very sweet and very concerned about these getting out and I respected her for that reason and will continue to do that but to her only not your [crude slang deleted] nah I'll dive more and find more people in your circle [expletive deleted]

thanksgiving should be a flipping hoot if [Friends and Relatives' names redacted] all know how much you loooooove listening to your baby "Miss Hottie" and her scrubs [crude phrase for masturbate] for ya while you defile your entire house.

I don't want nor will I read a response from you I will not engage you in any other way after this I want like I said

Photos

Videos

Conversations

Any call logs

All of anything you have and no stupid I don't need to get anymore videos of you [sexual euphemism redacted] Mr. Big unless she's in it.

I will omit your name in court unless ordered to provide it I will give you my word and sorry that's all I can stomach to offer you that every single thing I have and you give will then be deleted because to be honest I don't want any memory of this once I get the divorce overwith. [sic.] You may want to do a search on me get all my info toss out there that Brian's a drunk he works here or there he's done blah blah and that's fine you could've just asked before you decided to ruin a family and again any and all insults you think you're going to toss over my side of the fence have already been tossed and no matter how hard you look there's no video of me [slang term for masturbation] off out there so just put it away simply give me the entire load of smut and go see if you can fix your side.

My wife I will do one more thing for and ask you delete them as well she's usually not a nasty pig like this and she's already worried I'm going to do it so if you did give a [expletive deleted] even if minuscule delete them chalk this up as oh [expletive deleted] we got caught fix whatever you screwed up down there [expletive deleted] if not and you're out like she's going to be I have an Aunt that actually lives down there in

TN with Y'all Rebels and she can head south of that old mason dixon line then you two won't need a large hotel room or fold her up in the back seat while you [expletive deleted] her brains out [sexual euphemism deleted] her and whatever else you two moron pigs thought was so funny doing while I was "in a drunken stooper" as she put it. The only funny thing I seen was the repeated use of the word "[slang term for penis]" because homey I asked 6 people tonight alone if that was a [slang term for penis](nope didn't show your face YET) and after a few chuckles and me explaining my wife masturbated to that I think their words were dinky, penis, tiny and a couple actually said "WOW the rumors aren't true" so in ending if you feel the need to contact miss hottie and say whatever you want go get the number from the wife because my wife was ashamed enough to call her and apologize you can just simply send me the [expletive deleted] I asked for walk away and it's over for me.

Bye Bigggggg

P.S. —- I will not as I said engage in any back and forth talk I'm not threatened by you or threatening you in anyway I honestly hope you can save your family like I was trying to after cheating myself and my own addictions but you drove a truck right on through that.

Brispence@comcast.net …. It's best we close this whole thing out by Monday [Defendant's Birthday redacted] [expletive deleted] that me Bday Biggs and I'd rather spend it getting a free dinner than burning a spindle of dvds to start sending out to your circle like AOL discs back in the day.

15. Notwithstanding Brian's obvious attempt to extort information from Plaintiff on pains of Plaintiff's intimate visual depictions being disseminated to his "circle like AOL discs back in the day," Plaintiff did not respond to Brian's email/Facebook message.

16. Angered that his extortion threat had fallen on deaf ears, Brian prepared eleven (11) "Christmas cards." Of the eleven (11) Christmas cards, five (5) were identical. Another four (4) were identical. Two (2) cards were unique. Thus, each of the eleven (11)

cards could be classified into one of four (4) templates. Heavily redacted copies of each template are attached hereto as Exhibits A, B, C, and D, respectively.

17. Arranged like a collage, each card depicts the phrase "Merry Christmas" in some form or fashion, along with multiple visual depictions that Plaintiff had delivered to S.S. Each card bears at least one visual depiction of Plaintiff's face and penis.

   *a.* Exhibit A depicts at least two (2) pictures of Plaintiff's penis, and three pictures of his face. It is apparent from these depictions that the photographs originated from Plaintiff's Facebook Messenger account, as his name is listed thereupon.

   *b.* Exhibit B depicts the Plaintiff standing without his shirt, but wearing pants, doing a selfie. His face is clearly seen from this photo. Adjacent to this is another photo of Plaintiff standing in front of the same mirror naked, showing his penis in a selfie.

   *c.* Exhibit C depicts two (2) sexually explicit photographs of Plaintiff's genital area, including one picture of Plaintiff doing a naked "selfie" in front what can be identified as his bathroom mirror. Exhibit C also depicts a close-up photo of Plaintiff's face.

   *d.* Exhibit D depicts no less than three (3) sexually explicit photographs of Plaintiff's genital area, including two (2) pictures of Plaintiff doing a naked "selfie" in front what can be identified as his bathroom mirror. Exhibit D also depicts Plaintiff's face no less than four (4) times.

18. Plaintiff is identifiable from information displayed in connection with these visual depictions. One visual depiction of Plaintiff standing naked in front of his

bathroom mirror with his genitals uncovered is common to all cards. He can be identified from information displayed in connection with this specific visual depiction as follows:

     *a.* First, each card has at least one visual depiction of Plaintiff's face.

     *b.* Second, the mirror in this specific visual depiction reflects an image of the Plaintiff's bathroom sink.

     *c.* Third, the visual depiction also shows Plaintiff's torso, the likeness of which can be readily ascertained from other photos in some of the cards.

     *d.* Fourth, this specific visual depiction is a screen capture from S.S.'s Facebook Messenger account. At the bottom left of this depiction is a small circular image that identifies Plaintiff's Facebook Messenger account as being from where the image had first been transmitted. This same circular image is adjacent to other visual depictions in the cards.

     *e.* Fifth, and finally, stand-alone images of Plaintiff's penis and Plaintiff's face each bare that same identifying circular image at the bottom left of the image, indicating that it had first been sent from his account.

19. On December 1 and December 2, 2022, Brian mailed at least nine (9) envelopes each containing at least one of these Christmas cards. (One (1) envelope contained three (3) cards.) The envelopes were similar in texture, weight, and shape to traditional cards that are ubiquitous every December. Although one envelope bore a return address from "M. Hots" of Brockton, Massachusetts, the remaining envelopes bore Plaintiff's home address in Tennessee. These envelopes were mailed to the addresses of the Plaintiff, his ex-wife, his adult child, several of his neighbors, and his place of business.

20.  Except for the envelope mailed directly to the Plaintiff, which is the only envelope bearing the "M. Hots" return address (and is the only one with more than one card), each envelope was designed to deceive its recipient into thinking that he/she was receiving traditional Christmas cards from the Plaintiff's family.  The only indication that a given card might not be from the Plaintiff would have been either the "Brockton, MA" or "Boston, MA" postmark stamped on the envelope.[3]  Thus, after opening these envelopes, each recipient saw at least one card bearing the words "Merry Christmas" along with intimate visual depictions of the Plaintiff.  Each envelope is depicted, <u>infra</u>, in Counts II through X, respectively.

21.  Eleven (11) cards were mailed to Tennessee addresses in two (2) counties.  By directing these cards to the State of Tennessee with the specific intent of causing harm to Plaintiff,  Brian purposely availed himself the State of Tennessee's jurisdiction.  Thus, Brian created sufficient minimum contacts with this State to invoke this Court's personal jurisdiction over him.   Moreover, traditional notions of fair play and substantial justice would not be offended by bringing Brian to Tennessee since, *inter alia*, the recipients of these unsolicited Christmas cards all reside here.

22.  Each card was designed to cause Plaintiff to suffer extreme humiliation, derision, shame, scorn, contempt, and disrespect in the eyes of his family, friends, and employer.  Each card was mailed with malicious intent, thereby invoking outrage.  Put simply, Brian's behavior is not tolerated by civilized society.

23.  After receiving word of the Christmas cards,  Plaintiff's wife sent the following email to Brian on December 6, 2022, at the brispence@comcast.net:

---

[3] Incidentally, Brian works in Boston and lives near Brockton.

> So [Plaintiff's Name] just now told me about your email. Ru-
> ining his life is one thing, but I told you that I am an [occupa-
> tion redacted] and you do this? I am not the type that airs
> dirty laundry to EVERYONE in my family. For his DAUGH-
> TER to get sent a picture of his penis? I am a victim in all of
> this as well and now all of this is on me and MY family is
> getting these?

Brian replied to this email from his brispence@comcast.net account on December 9, 2022,

at 12:33 PM, tacitly admitting his culpability, *viz.*:

> I'd take a long hard look at home again before blaming me. I
> reached out to him and simply asked for everything that he
> had emails texts pics for my divorce and he chose to ignore me
> I also said I'd walk away silently if he did and could just delete
> it all. I emailed you months ago as well trying to set bounda-
> ries because of what you're saying and I again did not get a
> response. Sorry but I'm not going to be disrespected have this
> perv sending [sexually explicit term for masturbation] videos
> and don't think I haven't tormented her I believe in blaming
> all the people involved. As far as his daughter goes maybe he
> shouldn't put that smut out for the world to see? It may seem
> heartless but did he give a [expletive deleted] that my kids
> use her iPad?? MY DAUGHTER the one that means the
> world to me? And if she had just opened safari like I did this
> would have been right there. Again both are at fault and both
> get what they deserve. If you come to my house for Kool-Aid
> expect to repay the courtesy.

24. On December 16, 2022, Brian sent the following email to Plaintiff:

> Nice to know you knew about the email and completely Ig-
> nored a simple request of anything regarding contact to be
> sent photos, videos, texts or calls and even deleted your wife's
> email I sent to her must be that IT part of ya … Sackless com-
> pletely sackless and you knew I said she wasn't to be involved
> yet Mr. Bigg couldn't be bothered. I have ideas for days and
> can't think of a better person. I am sorry I upset your wife
> she's to [sic] good for garbage like the two of you. Hey she play
> words with friends?

25.  On December 19, 2022, Plaintiff's counsel sent a Brian cease-and-desist letter. After receiving it, Brian sent a Facebook message to Plaintiff on January 4, 2023, threatening his life:



26. As the direct and proximate result of Brian's threats, including his decision to follow through with his extortion threat by distributing sexually explicit material in the United States mails, Plaintiff has suffered extreme emotional distress, including loss of sleep, loss of appetite, depression, grief, and despair.

### *FEDERAL TORT CLAIMS*

### *Count I – Disclosure of Intimate Images (15 U.S.C. § 6851)*

27. The preceding paragraphs are incorporated by reference as if fully copied in words and figures.

28. On October 12, 2022, Brian emailed to Plaintiff's wife multiple intimate visual depictions of Plaintiff including, but not limited to, multiple photographs and videos of Plaintiff's penis. Brian transmitted these communications across state lines (from Massachusetts to Tennessee) via a means or facility of interstate commerce (i.e., the internet.) He did so without obtaining Plaintiff's consent and without any legal excuse.

29. Plaintiff is readily identifiable from information displayed in connection with these visual depictions. For example, one of the images Brian transmitted is a photograph of a computer screen depicting several Facebook messages listed in sequence. The top of the computer screen, which indicates the account from which the messages were sent, identifies the Plaintiff by name. One message on this computer screen depicts an erect penis. Because this photo originated from Plaintiff's Facebook Messenger account, one may discern that this penis belongs to Plaintiff.

30. Plaintiff did not give Brian consent to distribute this photograph of Plaintiff's penis – or any other intimate visual depiction of Plaintiff – to Plaintiff's wife. Specifically, Plaintiff had not given Brian an affirmative, conscious, and voluntary authorization free from force, fraud, misrepresentation, or coercion. In fact, prior to Brian's

14

October 27, 2022, email, Plaintiff had never been in communication with Brian in any way, shape, matter, or form. Thus, Brian had actual knowledge that Plaintiff had not consented to the distribution of this intimate visual depiction to Plaintiff's wife. At the very least, Brian recklessly disregarded whether Plaintiff had not consented to this disclosure since Brian had never contacted Plaintiff to seek his permission.

31. The intimate visual depictions of Plaintiff that Brian disclosed to Plaintiff's wife were not commercial pornographic content. Moreover, Brian's disclosures were not made in good faith to law enforcement; or as part of a legal proceeding; or as part of medical education, diagnosis, or treatment; or in the reporting or investigation of unlawful content or unsolicited or unwelcome content. Furthermore, the intimate visual depictions of Plaintiff were not a matter of public concern or public interest. Lastly, the intimate visual depictions were not reasonably intended to assist Plaintiff. Therefore, Brian has no legal excuse pursuant to § 6851 to avoid liability.

32. Plaintiff seeks liquidated damages in the amount of $150,000, plus attorney's fees, plus the costs of this action, plus other litigation costs reasonably incurred.

### *Count II – Disclosure of Intimate Images (15 U.S.C. § 6851)*

33. The preceding paragraphs are incorporated by reference as if fully copied in words and figures.

34. On or about December 1, 2022, Brian mailed a copy of the card identified as Exhibit D using the envelope depicted below using a United States Postal Service mailing receptacle in or near Brockton, Massachusetts.



35.     The letter was sent to a person having the initials T. G. who lives in Lewisburg, Tennessee.   Thus, Brian utilized the United States Postal Service, which is a means or facility of interstate commerce, to distribute the intimate visual depictions contained in Exhibit D.

36.     Plaintiff is readily identifiable from information displayed in connection with these visual depictions as described in the preceding paragraphs.

37.     Plaintiff did not give Brian consent to distribute any photograph of Plaintiff's penis – or any other intimate visual depiction of Plaintiff – to T. G.   Specifically, Plaintiff had not given Brian an affirmative, conscious, and voluntary authorization free from force, fraud, misrepresentation, or coercion.   Thus, Brian had actual knowledge that Plaintiff had not consented to the distribution of this intimate visual depiction to T. G. At the very least, Brian recklessly disregarded whether Plaintiff had not consented to this disclosure since Brian had never contacted Plaintiff to seek his permission.

38.     The intimate visual depictions of Plaintiff that Brian disclosed to T. G. were not commercial pornographic content.   Moreover, Brian's disclosures were not made in

good faith to law enforcement; or as part of a legal proceeding; or as part of medical education, diagnosis, or treatment; or in the reporting or investigation of unlawful content or unsolicited or unwelcome content. Furthermore, the intimate visual depictions of Plaintiff were not a matter of public concern or public interest. Lastly, the intimate visual depictions were not reasonably intended to assist Plaintiff. Therefore, Brian has no legal excuse pursuant to § 6851 to avoid liability.

39.     Plaintiff seeks liquidated damages in the amount of $150,000, plus attorney's fees, plus the costs of this action, plus other litigation costs reasonably incurred.

### *Count III – Disclosure of In0timate Images (15 U.S.C. § 6851)*

40.     The preceding paragraphs are incorporated by reference as if fully copied in words and figures

41.     On or about December 1, 2022, Brian mailed a copy of the card identified as Exhibit C using the envelope depicted below using a United States Postal Service mailing receptacle in or near Brockton, Massachusetts.



42. The letter was sent to Plaintiff's employer in Lewisburg, Tennessee. Thus, Brian utilized the United States Postal Service, which is a means or facility of interstate commerce, to distribute the intimate visual depictions contained in Exhibit C.

43. Plaintiff is readily identifiable from information displayed in connection with these visual depictions as described in the preceding paragraphs.

44. Plaintiff did not give Brian consent to distribute any photograph of Plaintiff's penis – or any other intimate visual depiction of Plaintiff – to his employer. Specifically, Plaintiff had not given Brian an affirmative, conscious, and voluntary authorization free from force, fraud, misrepresentation, or coercion. Thus, Brian had actual knowledge that Plaintiff had not consented to the distribution of this intimate visual depiction to Plaintiff's employer. At the very least, Brian recklessly disregarded whether Plaintiff had not consented to this disclosure since Brian had never contacted Plaintiff to seek his permission.

45. The intimate visual depictions of Plaintiff that Brian disclosed to Plaintiff's employer were not commercial pornographic content. Moreover, Brian's disclosures were not made in good faith to law enforcement; or as part of a legal proceeding; or as part of medical education, diagnosis, or treatment; or in the reporting or investigation of unlawful content or unsolicited or unwelcome content. Furthermore, the intimate visual depictions of Plaintiff were not a matter of public concern or public interest. Lastly, the intimate visual depictions were not reasonably intended to assist Plaintiff. Therefore, Brian has no legal excuse pursuant to § 6851 to avoid liability.

46. Plaintiff seeks liquidated damages in the amount of $150,000, plus attorney's fees, plus the costs of this action, plus other litigation costs reasonably incurred.

## _Count IV – Disclosure of Intimate Images (15 U.S.C. § 6851)_

47.     The preceding paragraphs are incorporated by reference as if fully copied in words and figures.

48.     On or about December 1, 2022, Brian mailed a copy of the card identified as Exhibit D using the envelope depicted below using a United States Postal Service mailing receptacle in or near Brockton, Massachusetts.



49.     The letter was sent to a person having the initials T. P. who lives in Lewisburg, Tennessee.   Thus, Brian utilized the United States Postal Service, which is a means or facility of interstate commerce, to distribute the intimate visual depictions contained in Exhibit D.

50.     Plaintiff is readily identifiable from information displayed in connection with these visual depictions as described in the preceding paragraphs.

51.     Plaintiff did not give Brian consent to distribute any photograph of Plaintiff's penis – or any other intimate visual depiction of Plaintiff – to T. P.  Specifically, Plaintiff had not given Brian an affirmative, conscious, and voluntary authorization free

from force, fraud, misrepresentation, or coercion. Thus, Brian had actual knowledge that Plaintiff had not consented to the distribution of this intimate visual depiction to T. P. At the very least, Brian recklessly disregarded whether Plaintiff had not consented to this disclosure since Brian had never contacted Plaintiff to seek his permission.

52. The intimate visual depictions of Plaintiff that Brian disclosed to T. P. were not commercial pornographic content. Moreover, Brian's disclosures were not made in good faith to law enforcement; or as part of a legal proceeding; or as part of medical education, diagnosis, or treatment; or in the reporting or investigation of unlawful content or unsolicited or unwelcome content. Furthermore, the intimate visual depictions of Plaintiff were not a matter of public concern or public interest. Lastly, the intimate visual depictions were not reasonably intended to assist Plaintiff. Therefore, Brian has no legal excuse pursuant to § 6851 to avoid liability.

53. Plaintiff seeks liquidated damages in the amount of $150,000, plus attorney's fees, plus the costs of this action, plus other litigation costs reasonably incurred.

### *Count V – Disclosure of Intimate Images (15 U.S.C. § 6851)*

54. The preceding paragraphs are incorporated by reference as if fully copied in words and figures.

55. On or about December 1, 2022, Brian mailed a copy of the card identified as Exhibit D using the envelope depicted below using a United States Postal Service mailing receptacle in or near Brockton, Massachusetts.

20



56. The letter was sent to a person having the initials D. K. who lives in Lewisburg, Tennessee. Thus, Brian utilized the United States Postal Service, which is a means or facility of interstate commerce, to distribute the intimate visual depictions contained in Exhibit D.

57. Plaintiff is readily identifiable from information displayed in connection with these visual depictions as described in the preceding paragraphs.

58. Plaintiff did not give Brian consent to distribute any photograph of Plaintiff's penis – or any other intimate visual depiction of Plaintiff – to D. K. Specifically, Plaintiff had not given Brian an affirmative, conscious, and voluntary authorization free from force, fraud, misrepresentation, or coercion. Thus, Brian had actual knowledge that Plaintiff had not consented to the distribution of this intimate visual depiction to D. K. At the very least, Brian recklessly disregarded whether Plaintiff had not consented to this disclosure since Brian had never contacted Plaintiff to seek his permission.

59. The intimate visual depictions of Plaintiff that Brian disclosed to D. K. were not commercial pornographic content. Moreover, Brian's disclosures were not made in

Case 1:23-cv-00002   Document 1   Filed 01/09/23   Page 21 of 38 PageID #: 21

good faith to law enforcement; or as part of a legal proceeding; or as part of medical education, diagnosis, or treatment; or in the reporting or investigation of unlawful content or unsolicited or unwelcome content. Furthermore, the intimate visual depictions of Plaintiff were not a matter of public concern or public interest. Lastly, the intimate visual depictions were not reasonably intended to assist Plaintiff. Therefore, Brian has no legal excuse pursuant to § 6851 to avoid liability.

60.     Plaintiff seeks liquidated damages in the amount of $150,000, plus attorney's fees, plus the costs of this action, plus other litigation costs reasonably incurred.

### *Count VI – Disclosure of Intimate Images (15 U.S.C. § 6851)*

61.     The preceding paragraphs are incorporated by reference as if fully copied in words and figures.

62.     On or about December 1, 2022, Brian mailed a copy of the card identified as Exhibit D using the envelope depicted below using a United States Postal 5Service mailing receptacle in or near Brockton, Massachusetts.



63. The letter was sent to a person having the initials A. S. who lives in Spring Hill, Tennessee. Thus, Brian utilized the United States Postal Service, which is a means or facility of interstate commerce, to distribute the intimate visual depictions contained in Exhibit D.

64. Plaintiff is readily identifiable from information displayed in connection with these visual depictions as described in the preceding paragraphs.

65. Plaintiff did not give Brian consent to distribute any photograph of Plaintiff's penis – or any other intimate visual depiction of Plaintiff – to A. S. Specifically, Plaintiff had not given Brian an affirmative, conscious, and voluntary authorization free from force, fraud, misrepresentation, or coercion. Thus, Brian had actual knowledge that Plaintiff had not consented to the distribution of this intimate visual depiction to A. S. At the very least, Brian recklessly disregarded whether Plaintiff had not consented to this disclosure since Brian had never contacted Plaintiff to seek his permission.

66. The intimate visual depictions of Plaintiff that Brian disclosed to A. S. were not commercial pornographic content. Moreover, Brian's disclosures were not made in good faith to law enforcement; or as part of a legal proceeding; or as part of medical education, diagnosis, or treatment; or in the reporting or investigation of unlawful content or unsolicited or unwelcome content. Furthermore, the intimate visual depictions of Plaintiff were not a matter of public concern or public interest. Lastly, the intimate visual depictions were not reasonably intended to assist Plaintiff. Therefore, Brian has no legal excuse pursuant to § 6851 to avoid liability.

67. Plaintiff seeks liquidated damages in the amount of $150,000, plus attorney's fees, plus the costs of this action, plus other litigation costs reasonably incurred.

### *Count VII– Disclosure of Intimate Images (15 U.S.C. § 6851)*

68.     The preceding paragraphs are incorporated by reference as if fully copied in words and figures.

69.     On or about December 2, 2022, Brian mailed a copy of the card identified as Exhibit C using the envelope depicted below using a United States Postal Service mailing receptacle in or near Boston, Massachusetts.



70.     The letter was sent to the "B." family, who live in Lewisburg, Tennessee. Thus, Brian utilized the United States Postal Service, which is a means or facility of interstate commerce, to distribute the intimate visual depictions contained in Exhibit C.

71.     Plaintiff is readily identifiable from information displayed in connection with these visual depictions as described in the preceding paragraphs.

72.     Plaintiff did not give Brian consent to distribute any photograph of Plaintiff's penis – or any other intimate visual depiction of Plaintiff – to the B. family. Specifically, Plaintiff had not given Brian an affirmative, conscious, and voluntary authorization free from force, fraud, misrepresentation, or coercion. Thus, Brian had actual

knowledge that Plaintiff had not consented to the distribution of this intimate visual depiction to the B. family. At the very least, Brian recklessly disregarded whether Plaintiff had not consented to this disclosure since Brian had never contacted Plaintiff to seek his permission.

73.     The intimate visual depictions of Plaintiff that Brian disclosed to the B. family were not commercial pornographic content. Moreover, Brian's disclosures were not made in good faith to law enforcement; or as part of a legal proceeding; or as part of medical education, diagnosis, or treatment; or in the reporting or investigation of unlawful content or unsolicited or unwelcome content. Furthermore, the intimate visual depictions of Plaintiff were not a matter of public concern or public interest. Lastly, the intimate visual depictions were not reasonably intended to assist Plaintiff. Therefore, Brian has no legal excuse pursuant to § 6851 to avoid liability.

74.     Plaintiff seeks liquidated damages in the amount of $150,000, plus attorney's fees, plus the costs of this action, plus other litigation costs reasonably incurred.

### *Count VIII – Disclosure of Intimate Images (15 U.S.C. § 6851)*

75.     The preceding paragraphs are incorporated by reference as if fully copied in words and figures.

76.     On or about December 2, 2022, Brian mailed a copy of the card identified as Exhibit C using the envelope depicted below using a United States Postal Service mailing receptacle in or near Boston, Massachusetts.



77. The letter was sent to A. B., who lives in Lewisburg, Tennessee. Thus, Brian utilized the United States Postal Service, which is a means or facility of interstate commerce, to distribute the intimate visual depictions contained in Exhibit C.

78. Plaintiff is readily identifiable from information displayed in connection with these visual depictions as described in the preceding paragraphs.

79. Plaintiff did not give Brian consent to distribute any photograph of Plaintiff's penis – or any other intimate visual depiction of Plaintiff – to A. B. Specifically, Plaintiff had not given Brian an affirmative, conscious, and voluntary authorization free from force, fraud, misrepresentation, or coercion. Thus, Brian had actual knowledge that Plaintiff had not consented to the distribution of this intimate visual depiction to A. B. At the very least, Brian recklessly disregarded whether Plaintiff had not consented to this disclosure since Brian had never contacted Plaintiff to seek his permission.

80. The intimate visual depictions of Plaintiff that Brian disclosed to A. B. were not commercial pornographic content. Moreover, Brian's disclosures were not made in good faith to law enforcement; or as part of a legal proceeding; or as part of medical

education, diagnosis, or treatment; or in the reporting or investigation of unlawful content or unsolicited or unwelcome content. Furthermore, the intimate visual depictions of Plaintiff were not a matter of public concern or public interest. Lastly, the intimate visual depictions were not reasonably intended to assist Plaintiff. Therefore, Brian has no legal excuse pursuant to § 6851 to avoid liability.

81.     Plaintiff seeks liquidated damages in the amount of $150,000, plus attorney's fees, plus the costs of this action, plus other litigation costs reasonably incurred.

### *Count IX – Disclosure of Intimate Images (15 U.S.C. § 6851)*

82.     The preceding paragraphs are incorporated by reference as if fully copied in words and figures.

83.     On or about December 2, 2022, Brian mailed a copy of the cards identified as Exhibits A, B, and C using the envelope depicted below using a United States Postal Service mailing receptacle in or near Boston, Massachusetts.



84.     The letter was sent to Plaintiff's family, who live in Lewisburg, Tennessee. Thus, Brian utilized the United States Postal Service, which is a means or facility of

interstate commerce, to distribute the intimate visual depictions contained in Exhibits A, B, and C.

85.     Plaintiff is readily identifiable from information displayed in connection with these visual depictions as described in the preceding paragraphs.

86.     Plaintiff did not give Brian consent to distribute any photograph of Plaintiff's penis – or any other intimate visual depiction of Plaintiff – to Plaintiff's family. Specifically, Plaintiff had not given Brian an affirmative, conscious, and voluntary authorization free from force, fraud, misrepresentation, or coercion. Thus, Brian had actual knowledge that Plaintiff had not consented to the distribution of this intimate visual depiction to Plaintiff's. family. At the very least, Brian recklessly disregarded whether Plaintiff had not consented to this disclosure since Brian had never contacted Plaintiff to seek his permission.

87.     The intimate visual depictions of Plaintiff that Brian disclosed to the Plaintiff's family were not commercial pornographic content. Moreover, Brian's disclosures were not made in good faith to law enforcement; or as part of a legal proceeding; or as part of medical education, diagnosis, or treatment; or in the reporting or investigation of unlawful content or unsolicited or unwelcome content. Furthermore, the intimate visual depictions of Plaintiff were not a matter of public concern or public interest. Lastly, the intimate visual depictions were not reasonably intended to assist Plaintiff. Therefore, Brian has no legal excuse pursuant to § 6851 to avoid liability.

88.     Plaintiff seeks liquidated damages in the amount of $150,000, plus attorney's fees, plus the costs of this action, plus other litigation costs reasonably incurred.

### *Count X – Disclosure of Intimate Images (15 U.S.C. § 6851)*

89.    The preceding paragraphs are incorporated by reference as if fully copied in words and figures.

90.    On or about December 2, 2022, Brian mailed a copy of the card identified as Exhibit C using the envelope depicted below using a United States Postal Service mailing receptacle in or near Boston, Massachusetts.



91.    The letter was sent to the H. family, who lives in Lewisburg, Tennessee. Thus, Brian utilized the United States Postal Service, which is a means or facility of interstate commerce, to distribute the intimate visual depictions contained in Exhibit C.

92.    Plaintiff is readily identifiable from information displayed in connection with these visual depictions as described in the preceding paragraphs.

93.    Plaintiff did not give Brian consent to distribute any photograph of Plaintiff's penis – or any other intimate visual depiction of Plaintiff – to the H. family. Specifically, Plaintiff had not given Brian an affirmative, conscious, and voluntary authorization free from force, fraud, misrepresentation, or coercion. Thus, Brian had actual

knowledge that Plaintiff had not consented to the distribution of this intimate visual depiction to the H. family. At the very least, Brian recklessly disregarded whether Plaintiff had not consented to this disclosure since Brian had never contacted Plaintiff to seek his permission.

94.     The intimate visual depictions of Plaintiff that Brian disclosed to the H. family were not commercial pornographic content. Moreover, Brian's disclosures were not made in good faith to law enforcement; or as part of a legal proceeding; or as part of medical education, diagnosis, or treatment; or in the reporting or investigation of unlawful content or unsolicited or unwelcome content. Furthermore, the intimate visual depictions of Plaintiff were not a matter of public concern or public interest. Lastly, the intimate visual depictions were not reasonably intended to assist Plaintiff. Therefore, Brian has no legal excuse pursuant to § 6851 to avoid liability.

95.     Plaintiff seeks liquidated damages in the amount of $150,000, plus attorney's fees, plus the costs of this action, plus other litigation costs reasonably incurred.

### *TENNESSEE TORT CLAIMS*
### *Count XI – Negligence Per Se (Federal Extortion)*

96.     The preceding paragraphs are incorporated by reference as if fully copied in words and figures.

97.     The relevant federal extortion statute, 18 U.S.C. § 875 (d), states:

> Whoever, with intent to extort from any person, firm, association, or corporation, any money or other thing of value, transmits in interstate or foreign commerce any communication containing any threat to injure the property or reputation of the addressee or of another or the reputation of a deceased person or any threat to accuse the addressee or any other person of a crime, shall be fined under this title or imprisoned not more than two years, or both.:

98. Brian threatened to place the sexually explicit material that Plaintiff had sent to S.S. onto DVDs and to distribute them to Plaintiff's circle if Plaintiff did not provide something of value to Brian (*i.e.*, information that could be used in Brian's divorce proceeding with S.S.) Brian knew that if this threat were brought to fruition, Plaintiff's reputation would suffer in the eyes of his friends, as his entire circle would see that he had engaged in an online sexual affair. Brian communicated this threat via email to Plaintiff. Brian made this threat while in Massachusetts, sending the same to Tennessee. Therefore, Brian communicated this extortion threat via interstate commerce. Ergo, Brian violated the aforesaid federal statute.

99. Section 875 (d) prohibits Brian from transmitting into interstate commerce any communication containing a threat to injure the reputation of the Plaintiff with the intent to extort from Plaintiff anything of value. Accordingly, § 875 (d) "imposes a duty or prohibits an act for the benefit of a person or the public," thereby fulfilling the first element of the tort of negligence *per se* in Tennessee. See Nevill v. City of Tullahoma, 756 S.W.2d 226, 232-233 (Tenn. 1988). Brian breached this duty.

100. Plaintiff, having been a victim of Brian's extortion attempt, is within the class of persons whom Congress intended to benefit and protect by the enactment of this statute, thereby fulfilling the second element of the tort of negligence *per se*. Cf. Traylor v. Coburn, 597 S.W.2d 319, 322 (Tenn. Ct. App. 1980) (citing Carter v. Redmond, 218 S.W. 217 (Tenn. 1920)).

101. Brian's behavior was the proximate cause of the severe emotional distress that Plaintiff complains of herein. Thus, the third element of the tort of negligence *per se* is fulfilled. Cf. Brookins v. The Round Table, 624 S.W.2d 547, 550 (Tenn. 1981).

31

102. Because Brian's actions as described herein have fulfilled the elements of negligence *per se*, Brian is liable to Plaintiff for his damages.

103. Plaintiff seeks compensatory damages and punitive damages in the amount to be determined by this Court, plus attorney's fees, plus the costs of this action, plus post judgment interest.

### *Count XII – Negligence Per Se (Federal Cyberstalking)*

104. The preceding paragraphs are incorporated by reference as if fully copied in words and figures.

105. The federal cyberstalking statute, 18 U.S.C. § 2261A (2), states:

> Whoever:  …
>
> (2) with the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate another person, uses the mail, any interactive computer service or electronic communication service or electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce to engage in a course of conduct that—
>
>> (A) places that person in reasonable fear of the death of or serious bodily injury to a person, a pet, a service animal, an emotional support animal, or a horse described in clause (i), (ii), (iii), or (iv) of paragraph (1)(A); or
>>
>> (B) causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress to a person described in clause (i), (ii), or (iii) of paragraph (1)(A),
>
> shall be punished as provided in section 2261(b) of this title.

106. Section 2261A (2) prohibits Brian from using an interactive computer service or an electronic communication system of interstate commerce (such as Facebook or

his Comcast email account) to harass or intimidate Plaintiff (or any other member of the public) by engaging in a course of conduct that (a) places him in fear of death or serious bodily injury to himself or to her family members, or that (b) causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress to him. Accordingly, § 2261A (2) "imposes a duty or prohibits an act for the benefit of a person or the public," thereby fulfilling the first element of the tort of negligence *per se*. See <u>Nevill</u>, 756 S.W.2d at 226, 232-233.

107.    When Brian emailed his extortion threat, along with his subsequent emails to Plaintiff and Plaintiff's wife, Brian transmitted these messages across state lines and back again, impacting interstate commerce. Therefore, Brian used an interactive computer service or electronic communication service or electronic communication system of interstate commerce to transmit these communications across state lines, thereby falling squarely into the jurisdiction of § 2261A.

108.    Brian transmitted these communications on two or more occasions, evidencing a continuity of purpose, and as such, a course of conduct. See 18 USC § 2266 (2). He also used the internet to locate the names and addresses of Plaintiff's friends, family, and employer, evidencing an intent to stalk.

109.    Brian's communications are "true threats," as the term understood in the context of First Amendment law. Therefore, no First Amendment protection exists.

110.    Brian engaged in this course of conduct with the intent of harassing Plaintiff. Therefore, this course of conduct placed Plaintiff in reasonable fear of death or serious bodily injury to himself or his family, parties who are covered by § 2261A. Likewise,

this course of conduct caused, attempted to cause, or would have been reasonably expected to cause substantial emotional distress to Plaintiff.

111.    Brian has violated the federal cyberstalking statute, § 2261A, as evidenced by his emails and Facebook messages to Plaintiff described above.

112.    In relation to Brian, Plaintiff is "another person."  <u>See</u> § 2261A.  Therefore, the plain text of § 2261A contemplates that Plaintiff is within the class of persons whom Congress intended to benefit and protect by the enactment of this statute, thereby fulfilling the second element of the tort of negligence *per se*.  <u>Cf.</u> <u>Traylor</u>, 597 S.W.2d at 322 (Tenn. Ct. App. 1980).

113.    The aforesaid behavior of Brian has been the proximate cause of the severe emotional distress that Plaintiff complains of herein.  Thus, the third element of the tort of negligence *per se* is fulfilled.  <u>Cf.</u> <u>Brookins</u>, 624 S.W.2d at 550 (Tenn. 1981).

114.    Because Brian's actions as described herein have fulfilled the elements of negligence *per se,*  Brian is liable to Plaintiff for his damages.

115.    Plaintiff seeks compensatory damages and punitive damages in the amount to be determined by this Court, plus attorney's fees, plus the costs of this action, plus post judgment interest.

### *<u>Count XIII – Intentional Infliction of Emotional Distress</u>*

116.    The preceding paragraphs are incorporated by reference as if fully copied in words and figures.

117.    On ten different occasions, Brian intentionally published the aforesaid sexually explicit photographs of the Plaintiff's penis to friends and family members of the Plaintiff.  Thus, Brian engaged in outrageous conduct not tolerated in a civil society.  By

doing so, Brian caused severe mental injury to Plaintiff, causing him to suffer sleepless nights, depression, and anxiety.

118.    Plaintiff seeks compensatory damages and punitive damages in the amount to be determined by this Court, plus attorney's fees, plus the costs of this action, plus post judgment interest.

### *Count XIV– Publicity Given to Private Facts*

119.    The preceding paragraphs are incorporated by reference as if fully copied in words and figures.

120.    Brian gave publicity to a matter concerning the private life of Plaintiff. This publicity would be highly offensive to a reasonable person and was not a legitimate concern of the public.

121.    Plaintiff seeks compensatory damages and punitive damages in the amount to be determined by this Court, plus attorney's fees, plus the costs of this action, plus post judgment interest.

### *REQUEST FOR INJUNCTIVE RELIEF*

122.    The preceding paragraphs are incorporated by reference as if fully copied in words and figures.

123.    Plaintiff seeks a temporary restraining order, preliminary injunction, and a permanent injunction ordering Brian to cease display or disclosure of the visual depictions referenced herein pursuant to § 6851(b)(3)(B), and to refrain from contacting (directly or indirectly) or coming within 1,000 feet of Plaintiff, any member of Plaintiff's family, or any person known to be associated with Plaintiff.

124. In view of the recent death threat that was levied upon Plaintiff by Brian on or about January 4, 2023, Plaintiff asserts that immediate and irreparable injury, loss, or damage may occur to Plaintiff's person and reputation (or to the persons of his family, friends, associates, and coworkers) before Brian can be heard in opposition. Specifically, nothing presently prevents Brian from issuing further disclosures of the aforesaid intimate visual depictions.

125. Plaintiff also seeks a preliminary injunction and a permanent injunction pursuant to § 6851 (b)(3)(B), which states: "… [T]he court may grant injunctive relief maintaining the confidentiality of a plaintiff using a pseudonym."

WHEREFORE, PREMISES CONSIDERED, Plaintiff JOHN DOE seeks entry of a judgment against BRIAN SPENCER for the money and other relief listed below:

1. Statutory liquidated damages in the aggregate amount of $1,500,000 pursuant to 15 U.S.C. § 6851 (b)(3)(A)(i) for the ten (10) unauthorized disclosures of intimate visual depictions of the Plaintiff as complained of herein;

2. Compensatory damages in an amount to be determined by this Court for all Tennessee law claims;

3. Punitive damages in an amount to be determined by this Court for all Tennessee law claims;

4. Reasonable attorney's fees pursuant to 15 U.S.C. § 6851 (b)(3)(A)(i);

5. Court costs pursuant to 15 U.S.C. § 6851 (b)(3)(A)(i);

6. All reasonable costs of litigation pursuant to 15 U.S.C. § 6851 (b)(3)(A)(i); and

7. Post judgment interest.

FURTHERMORE, Plaintiff prays for a temporary restraining order, preliminary injunction and a permanent injunction that will order the Defendant (1) to refrain from contacting (directly or indirectly) or coming within 1,000 feet of Plaintiff, any member of Plaintiff's family, or any person known to be associated with Plaintiff; (2) to refrain from disclosing any intimate visual depictions of the Plaintiff; and (3) to refrain from disclosing the true identity of John Doe to any other person.

The Plaintiff prays for general relief, whether legal or equitable, that this Court deems meet and proper in the premises.

RESPECTFULLY SUBMITTED, on this the 9th day of January 2023,

JOHN DOE

BY: _____

Matthew Wilson (TN BPR 028175)

Prepared by:

Matthew Wilson (TN BPR 028175)
The Law Office of Matthew Wilson
2218 W. Main Street, Suite B
Tupelo, MS 38801
Telephone: (662) 260-6544
Facsimile: (662) 546-4893
lawyermatt@betteraskmatt.com

37

<u>28 U.S.C. § 1746 DECLARATION OF JOHN DOE</u>

I verify under penalty of perjury that the foregoing is true and correct.

Executed on January 9, 2023
.

_John Doe_
_____
JOHN DOE