IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
AT COLUMBIA

| | |
|---|---|
| JOHN DOE | ) |
| | ) |
| v. | ) NO. 1:23-cv-00002 |
| | ) |
| BRIAN SPENCER, et al. | ) |

**TO:** Honorable William L. Campbell, Jr., United States District Judge

## REPORT AND RECOMMENDATION

This civil case, in which Defendant Brian Spencer ("Defendant") proceeds *pro se*, has been referred to the Magistrate Judge for pretrial proceedings under 28 U.S.C. §§ 636(b)(1)(A) and (B). *See* Order entered March 17, 2023 (Docket Entry No. 35).

Presently pending before the Court are four separate motions to dismiss filed by Defendant. (Docket Entry Nos. 28, 29, 30, and 31.). The motions are opposed by Plaintiff. (Docket Entry No. 32.) Defendant also replied. (Docket Entry No. 34.) For the reasons set out below, the undersigned respectfully recommends that the motions be denied.

### I. FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff John Doe ("Plaintiff") is a resident of Marshall County, Tennessee. Defendant is a resident of the Commonwealth of Massachusetts. During 2022, Plaintiff and Defendant's wife ("S.S.") engaged in a consensual, extra-marital, on-line relationship during which they exchanged with each other sexually explicit photographs, videos, and messages, some of which included nudity.

---

[1] Solely for purposes of the instant motions, the summarized facts are taken from Plaintiff's Verified Complaint (Docket Entry No. 1).

Defendant learned of the affair and obtained access to the photographs, videos, and messages, which S.S. had saved on her phone, iPad, and/or other computing devices. In October 2022, Defendant contacted Plaintiff's wife by a Facebook message and by e-mail, providing her with multiple photographs, videos, and messages that had been exchanged between S.S. and Plaintiff. Defendant then contacted Plaintiff by e-mail on October 27, 2022, informing Plaintiff that Defendant planned to file for a divorce from S.S. and demanding that Plaintiff send to Defendant essentially all photographs, videos, and communications that Plaintiff had concerning the relationship with S.S. Defendant threatened to disclose the explicit materials of Plaintiff that he had obtained from S.S.'s devices to Plaintiff's family, friends, and business associates if Plaintiff did not send Defendant the requested materials and stated, "I promise I will make it my life's only focus to humiliate you the way you two have me."[2]

Plaintiff did not respond to the e-mail and, on or about December 1 and 2, 2022, Defendant used the U.S. Mail to mail a total of nine envelopes to Plaintiff, his ex-wife, his adult child, several of his neighbors, and his place of business at addresses in Lewisburg, Tennessee and Spring Hill, Tennessee. These envelopes were in the size and shape of traditional Christmas cards. Each envelope contained at least one of four different versions of a collage that included the phrase "Merry Christmas" and included multiple photographs and screen shots of the sexually explicit photographs and messages Plaintiff had sent S.S. Each version included pictures of Plaintiff, including his face and naked genitalia, as well as a symbol from Plaintiff's Facebook messenger account.

---

[2] Verified Complaint at ¶ 14.

Defendant had another e-mail exchange with Plaintiff's wife, and on December 16, 2022, emailed Plaintiff: "Nice to know you knew about the email and completely Ignored a simple request of anything regarding contact to be sent . . . I have ideas for days and can't think of a better person. I am sorry I upset your wife . . . ."[3] Plaintiff, through counsel, sent Defendant a cease-and-desist letter on December 19, 2022. On January 4, 2023, Plaintiff received a message from Defendant's Facebook account that stated: "Look who died, in an accident I think you know him so sorry . . . "with a link that appeared to be to an online video. Plaintiff construed the message as a threat.

Plaintiff thereafter initiated this case on January 9, 2023, by filing a Verified Complaint against Defendant and "Fictitious Persons 1-10."[4] Plaintiff seeks statutory, compensatory, and punitive damages, as well as injunctive relief. Plaintiff alleges that Defendant's distribution of intimate visual depictions of Plaintiff without Plaintiff's consent violates Section 1309 of the Violence Against Women Reauthorization Act of 2022, 15 U.S.C. § 6851 (Counts I-X), and he also brings state law tort claims for negligence *per se* (Counts XI and XII), intentional infliction of emotional distress (Count XIII), and "publicity given to private facts" (Count XIV).

In conjunction with the filing of his complaint, Plaintiff sought a temporary restraining order. The Court granted Plaintiff's request in part and ordered that "[Defendant] and all persons in active concert or participation with him are hereby restrained, enjoined, and prohibited from distributing intimate visual depictions of Plaintiff and from disclosing Plaintiff's identity to anyone else." *See* Order entered January 11, 2023 (Docket Entry No. 9) at 2.

---

[3] *Id.* ¶ 24.
[4] Plaintiff has not identified any of the "Doe" defendants.

After being served with process, a copy of the Court's Temporary Restraining Order, and other filings made in the case, Defendant filed a Memorandum in Opposition of the Temporary Restraining Order on January 27, 2023, requesting that the Court lift the Temporary Restraining Order and remove it from his record. *See* Docket Entry No. 14. By Order entered February 2, 2023 (Docket Entry No. 26), the Court granted Plaintiff's motion to extend the Temporary Restraining Order and directed that "Pursuant to Federal Rule of Civil Procedure 65(d)(2), this injunction binds the parties and any other persons in active concert with the parties. It is effective until an adjudication on the merits of Plaintiff's claims." *Id*.

In lieu of an answer, Defendant filed the four motions to dismiss that are pending before the Court.

## II. MOTIONS TO DISMISS AND RESPONSE IN OPPOSITION

Instead of filing a single motion raising his collective arguments, Plaintiff filed four separate motions, each raising a basis for dismissal of the case.

First, Defendant argues that dismissal is warranted under Rule 11(b)(3) of the Federal Rules of Civil Procedure. Defendant contends that Plaintiff included in his verified complaint an allegation that Defendant had threatened his life by sending him the Facebook message on January 4, 2023, without first engaging in due diligence to verify that this was an actual threat. *See* Motion #1 (Docket Entry No. 28).

Second, Defendant argues that he cannot be deemed liable under 15 U.S.C. § 6851 because a provision of the 1996 Telecommunications Act, 47 U.S.C. § 230(c), precludes courts from holding a defendant liable for distributing content provided by another information content provider through an interactive computer service. Defendant contends that this provision applies

4

because Plaintiff and S.S. interacted on Facebook, an interactive computer service. *See* Motion #2 (Docket Entry No. 29).

Defendant's third and fourth motions to dismiss are both based upon the argument that this Court does not have personal jurisdiction over him. S*ee* Motion #3 (Docket Entry No. 30) and Motion #4 (Docket Entry No. 31). Defendant argues that he has absolutely no contacts with the State of Tennessee and that there are not even minimum contacts between himself and the State of Tennessee that would require him to defend against this lawsuit in this Court. He further asserts that "Plaintiff cannot be the only link" upon which the assertion of personal jurisdiction over him in this lawsuit is based. *See* Motion #4 at 2. He contends that requiring him to travel to Tennessee to defend against this lawsuit is a direct hardship to himself and his family and violates his Fifth and Fourteenth Amendment rights.

Plaintiff argues in rebuttal to each of Plaintiff's motions. *See* Response in Opposition (Docket Entry No. 32), to which Defendant filed a reply (Docket Entry 34). Upon the directive of the Court, Plaintiff filed a sur-reply (Docket Entry No. 37), addressing the personal jurisdiction arguments made by Defendant in his reply.

### III. STANDARDS OF REVIEW

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to file a motion to dismiss for lack of personal jurisdiction. In considering such a motion, the district court "may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499 (6th Cir. 2020) (quoting *Serras v. First Tenn. Bank Nat. Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)) (cleaned up). When the district court rules based on written submissions

5

alone, as in the present case, the plaintiff need only make out a prima facie showing that personal jurisdiction exists. *Malone*, 965 F.3d at 504.

As the party bringing the lawsuit, Plaintiff must establish that this Court has personal jurisdiction over the Defendant. *See Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002); *Nationwide Mut'l Ins. Co. v. Tryg Int'l Ins. Co., Ltd.*, 91 F.3d 790, 793 (6th Cir. 1996). "Motions to dismiss under Rule 12(b)(2) involve burden shifting." *Id*. "The plaintiff must first make a *prima facie* case, which can be done merely through the complaint." *Id*. (citing *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988)). "The burden then shifts to the defendant, whose motion to dismiss must be properly supported with evidence." *Id*. (citing *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)). "Once the defendant has met the burden, it returns to the plaintiff, who may no longer stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Id*. (internal quotations omitted). "The court must view the pleadings and affidavits in a light most favorable to the plaintiff and not weigh the controverting assertions of the party seeking dismissal." *Ingram Barge Co., LLC v. Zen-Noh Grain Corp.*, 3 F.4th 275, 278 (6th Cir. 2021) (citation and internal quotations omitted).

In reviewing a motion brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for relief, the Court must accept the well-pled material allegations of the pleadings as true. *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). However, the pleadings must provide the grounds for Plaintiff=s entitlement to relief and consist of more than Alabels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The well-pled factual allegations must show a plausible right to relief. *Twombly*, 550 U.S. at 555-61.

6

To state a plausible claim for relief, the alleged facts must provide more than a sheer possibility that a defendant has acted unlawfully. *Mik v. Fed. Home Loan Mortg. Corp.*, 743 F.3d 149, 157 (6th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). Plaintiff's factual allegations must "do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

IV. ANALYSIS

A. **Motion #1 Rule 11(b)(3) (Docket Entry No. 28)**

The Court finds no merit in the argument for dismissal that is raised in this motion. To the extent that Defendant brings his motion because of an alleged violation of Rule 11, he did not follow the specific and mandatory "safe harbor" filing requirement of Rule 11(c)(2) prior to filing his motion. This failure itself requires denial of the motion. *Ridder v. City of Springfield*, 109 F.3d 288, 297 (6th Cir. 1997).

Further, the Court does not agree with Defendant that Plaintiff's inclusion in his verified complaint of the allegation concerning the Facebook message of January 4, 2023, was in anyway a violation of Rule 11(b)(3) or was "fraud." Clearly, the factual allegation that Plaintiff received a message from Defendant's Facebook account and that the content of the message included reference to death and an accident is an allegation supported by an evidentiary basis. Plaintiff's perception of the message as a threat on his life was within the realm of reasonableness given the content of the message and the alleged acts of Defendant in the case that preceded the message. The fact that the message was subsequently determined to be the result of computer hacking and was also sent to numerous other individuals in no way renders Plaintiff's inclusion of the allegation

7

as act of fraud. Defendant's contention that Plaintiff should have undertaken an investigation into whether the threat was actual or not is wholly unpersuasive.

Finally, Defendant's apparent contention that Plaintiff's lawsuit is centered upon only the threat, as opposed to the dissemination of the explicit materials to other individuals, is nonsensical. Indeed, the allegation regarding the January 4, 2023, Facebook message appears to be linked to only one of the multiple claims raised by Plaintiff.

B.     **Motion #2 Telecommunications Act (Docket Entry No. 29)**

The Court finds no merit in the argument for dismissal raised by Defendant in this motion. Plaintiff's federal claims are brought under 15 U.S.C. § 6851(b)(1)(A), which provides that:

> Except as provided in paragraph (4),[5] an individual whose intimate visual depiction is disclosed, in or affecting interstate or foreign commerce or using any means or facility of interstate or foreign commerce, without the consent of the individual, where such disclosure was made by a person who knows that, or recklessly disregards whether, the individual has not consented to such disclosure, may bring a civil action against that person in an appropriate district court of the United States for relief as set forth in paragraph (3).

15 U.S.C. § 6851(b)(1)(A). Defendant argues that he is shielded from liability by the language of 47 U.S.C. § 230(c). Section 230(c) is contained within the Communications Decency Act of 1996 and states in full:

> (c)     Protection for "good samaritan" blocking and screening of offensive material
>
> (1)     Treatment of publisher or speaker
>
> No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.
>
> (2)     Civil liability

---

[5] None of the referenced exceptions are applicable to the facts of this case.

> No provider or user of an interactive computer service shall be held liable on account of—
>
> (A) any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected; or
>
> (B) any action taken to enable or make available to information content providers or others the technical means to restrict access to material described in paragraph (1).

47 U.S.C. § 230(c).

As noted by the Sixth Circuit, Congress enacted the Communications Decency Act "[s]eeking to encourage websites like Google to reproduce content from other Internet users" and provided them with an immunity from claims that seek to treat them as "publisher[s]" of third-party content. *O'Kroley v. Fastcase, Inc.*, 831 F.3d 352, 354 (6th Cir. 2016). The Sixth Circuit has also noted that "[a]t its core, § 230 bars 'lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions – such as deciding whether to publish, withdraw, postpone or alter content.'" *Jones v. Dirty World Ent. Recordings, LLC*, 755 F.3d 398, 407 (6th Cir. 2014) (citing *Zeran v. AOL*, 129 F.3d 327, 3330 (4th Cir. 1997)).

Defendant provides no actual legal support for his contention that he is immunized from legal liability for disclosing the offending materials as alleged. He points to no court that has adopted his argument, and the copy of a legal article from the Congressional Research Service is not a court opinion. Further, and more importantly in the Court's view, Defendant's alleged wrongful conduct falls well outside the scope of Section 230's protection. Defendant is alleged to have made copies of sexually explicit pictures and messages, including "intimate visual depiction" that are covered by 15 U.S.C. § 6851(b)(1)(A), created pseudo Christmas Cards out of these images

9

and messages, and then disclosed them to Plaintiff's family, friends, neighbors, and business associates through the U.S. Mail. Nothing in Section 230 or any of the case law that has developed around this statute suggests that Section 230 would apply to the wrongful conduct alleged in this case.

**C.    Motions #3 Fourteenth and Fifteenth Amendments (Docket Entry No. 30) and #4 Personal Jurisdiction (Docket Entry No. 31)**

The Due Process Clause "constrains a State's authority to bind a nonresident defendant to a judgment of its courts," *Walden v. Fiore*, 571 U.S. 277, 283 (2014), and requires that a defendant be subject to the personal jurisdiction of the court. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). When subject matter jurisdiction is based upon the existence of a federal question, "personal jurisdiction over a defendant exists if the defendant is amenable to service of process under the forum state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant due process." *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (citing *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992) (cleaned up). Because Tennessee's long-arm statute extends its jurisdiction to due process's limits, whether due process has been satisfied is all that Court must address. *Parker v. Winwood*, 938 F.3d 833, 839 (6th Cir. 2019); *Michigan Coalition*, 954 F.2d at 1176.   As a general proposition, "due process requires that an out-of-state defendant have minimum contacts with the forum state sufficient to comport with traditional notions of fair play and substantial justice." *Blessing v. Chandrasekhar*, 988 F.3d 889, 904 (6th Cir. 2021) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (cleaned up).

10

In the instant case, personal jurisdiction is based upon Defendant's specific contacts with Tennessee as they relate to the claims in the case.[6] Plaintiff contends that Defendant's tortious actions caused an injury inside Tennessee and that, by mailing the offending materials to different addresses of residents and a business in Tennessee, Defendant purposefully availed himself of acting in Tennessee and created minimum contacts that satisfy due process and create personal jurisdiction. *See* Verified Complaint at ¶ 9 and ¶ 21.

The Court agrees with Plaintiff on this issue. This is not a case in which Defendant's alleged conduct occurred entirely outside of Tennessee, in which Defendant took no action that was directed at Tennessee, and in which the only connection between the case and Tennessee is the fact that Plaintiff resides within Tennessee. If those were the factual circumstances, it would be highly unlikely that personal jurisdiction over Defendant would exist in this case. *See Walden*, 571 U.S. at 288-89.

However, that scenario is not presented by this case. To the contrary, and in direct contradiction of Defendant's statement that his "interaction with the State of Tennessee is nonexistent," *see* Defendant's Reply at 6, Defendant engaged in no less than nine actions to create contacts with Tennessee when he mailed nine envelopes containing the offending materials to Tennessee residents and a business at addresses within Tennessee. These were not random fortuitous, or attenuated contacts Defendant had with Tennessee. These were targeted, purposeful

---

[6] Personal jurisdiction can arise from a defendant's specific contacts that are part of the underlying controversy or from a defendant's more general contacts with the forum state. *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 501 (6th Cir. 2020). There are no allegations that Defendant has sufficient general contacts with Tennessee to support the exercise of personal jurisdiction over him. For that reason, Defendant's contention that he has no relatives, friends, or acquaintances in Tennessee, does not carry out any business in Tennessee, and does not own a home, property, or rental property in Tennessee, *see* Motion #3 at 1-2, are not significant since those types of contacts are more relevant to a determination of general jurisdiction.

11

actions specifically directed at Tennessee and intended to cause specific harm to Plaintiff within Tennessee by disclosing the offending materials to Tennessee residents within this State.

Accordingly, Defendant's connection with Tennessee is based upon action and contacts that *Defendant himself* created with Tennessee. *Walden*, 571 U.S. at 284 (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985)). Further, as already noted, Defendant's contacts with Tennessee are not merely based upon contact with Plaintiff but are based upon Defendant's actions of purposefully reaching out beyond his own residence and going into the State of Tennessee through his several mailings. *Walden*, 571 U.S. at 285 ("although physical presence in the forum is not a prerequisite to jurisdiction, physical entry into the State - either by the defendant in person or through an agent, goods, mail, or some other means - is certainly a relevant contact.") (internal citation omitted). Additionally, the injury at issue is an injury specifically intended to be felt within Tennessee by humiliating and impacting Plaintiff amongst family, friends, and business associates in Tennessee. *Calder v. Jones*, 465 U.S. 783, 788-89 (1984). *See also Walden*, 571 U.S. at 287-88 (upholding the validity of *Calder*'s reliance upon the "effects" caused by the defendants' conduct when the effects connected the defendants' conduct to the forum state, not just to the plaintiff who lived there). Finally, Defendant's mailings did not directly impact only Plaintiff. Each of the Tennessee residents who opened the mailings were impacted by Defendant's conduct.

In the end, the Court finds that it can exercise specific personal jurisdiction over Defendant in this case without offending due process. Given that the Court finds that there is little question that the merits of this issue favor Plaintiff, the Court declines to address Plaintiff's alternative argument that Defendant waived his right to contest personal jurisdiction.[7]

---

[7] Defendant's Motions #3 and #4 refer to both supplemental jurisdiction and to the jurisdiction of the State of Tennessee to prosecute him for criminal charges. However, it is apparent

12

## V. RECOMMENDATION

For the reasons set out above, it is respectfully RECOMMENDED that Defendant's motions to dismiss (Docket Entry Nos. 28, 29, 30, and 31) be DENIED and that Defendant be required to answer the complaint.

ANY OBJECTIONS to this Report and Recommendation must be filed within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Rule 72(b)(2) of the Federal Rules of Civil Procedure and Local Rule 72.02(a). Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Any response to the objections must be filed within fourteen (14) days after service of objections. *See* Federal Rule 72(b)(2) and Local Rule 72.02(b).

Respectfully submitted,

*[signature]*
BARBARA D. HOLMES
United States Magistrate Judge

---

that both motions are directed at the issue of personal jurisdiction. Further, the Court's exercise of supplemental jurisdiction over state law claims is a different issue than that of personal jurisdiction over a defendant, as is the issue of a State's jurisdiction to criminally prosecute a criminal defendant, and neither of which presents an argument for dismissal of this case.